UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 7 |
| | ) | |
| ERIC FOSSE, | ) | |
| | ) | |
| DEBTOR. | ) | CASE NO. 16-34823 |
| | ) | |
| PATRICK S. LAYNG | ) | |
| UNITED STATES TRUSTEE, | ) | ADV. NO. |
| | ) | |
| PLAINTIFF, | ) | |
| v. | ) | |
| | ) | |
| ERIC FOSSE, | ) | |
| | ) | |
| DEFENDANT. | ) | HON. JACQUELINE P. COX |

**COMPLAINT OBJECTING TO DEBTOR'S DISCHARGE**

NOW COMES PATRICK S. LAYNG, the United States Trustee for the Northern District of Illinois (the "U.S. Trustee"), by and through his attorney, Elizabeth R. Brusa, and hereby requests this Court enter judgment denying the discharge of Eric Fosse pursuant to sections 727(a)(2) and (a)(4) of title 11 of the United States Code. In support thereof, and as for his Complaint, the U.S. Trustee respectfully states as follows:

**PARTIES**

1.  Plaintiff is Patrick S. Layng, the duly appointed United States Trustee for the Northern District of Illinois, who is charged with supervising the administration of bankruptcy cases under title 28 of the United States Code, section 586(a).

2.  Plaintiff maintains his principal place of business in the Dirksen Federal Building, located at 219 South Dearborn Street, Room 873, Chicago, Illinois, County of Cook, 60604, which is within the jurisdiction of the Eastern Division of the Northern District of Illinois.

1

3. Eric Fosse (the "Defendant") is the debtor in the underlying bankruptcy case, case number 16-34823, filed in the Eastern Division of the Northern District of Illinois (the "Bankruptcy Case").

4. Defendant's address of record is 1135 Skokie Ridge Drive, Glencoe, Illinois, County of Cook, 60022, which is within the jurisdiction of the Eastern Division of the Northern District of Illinois.

## JURISDICTION

5. This Court has jurisdiction to hear and determine this adversary proceeding pursuant to title 28 of the United States Code, sections 157(b)(2)(I) and (J), and the United States District Court for the Northern District of Illinois's Internal Operating Procedure 15(a) and Local Rule 40.3.1.

6. Plaintiff consents to entry of a final order or judgment by this Bankruptcy Court in this adversary proceeding.

7. Venue of this adversary proceeding is proper in the United States District Court for the Northern District of Illinois pursuant to title 28 of the United States Code, sections 1334 and 1409(a).

8. Plaintiff has standing to be heard on the issues hereby raised and authority to bring this Complaint under title 11 of the United States Code, sections 307 and 727(c)(1).

9. This Complaint is timely as the final date for Plaintiff to object to Defendant's discharge has been extended to May 22, 2017.  *See* Dkt. 26.

**BACKGROUND**

I.   **Defendant's Bankruptcy Case.**

10.   On October 31, 2016 (the "Petition Date"), Defendant filed a voluntary petition for relief under chapter 7 of title 11 of the United States Code, sections 101 *et seq.* (the "Bankruptcy Code"). With his petition, Defendant filed, *inter alia*, Schedules A – J, a Statement of Financial Affairs, and a Statement of Intention (collectively, the "Petition"). A true and correct copy of the Petition is attached hereto as Exhibit A.

11.   At all times relevant, Defendant has been represented by attorneys employed by Rotman & Rotman, Ltd., including Robert D. Rotman, Esq. ("Mr. Rotman").

12.   Robert B. Katz, Esq. (the "Chapter 7 Trustee"), is the appointed Chapter 7 trustee in this Bankruptcy Case.

13.   Contemporaneous with filing the Petition, Defendant filed signed declarations (the "Declarations"). A true and correct copy of the Declarations is attached hereto as Exhibit B.

14.   Contemporaneous with filing the Petition, Defendant filed a signed Part 7 of the Voluntary Petition for Individuals Filing for Bankruptcy (the "Petition Declaration"). *Ex. B*, at p. 1. In the Petition Declaration, Defendant declared that he "examined this petition and … declare[s] under penalty of perjury that the information provided is true and correct." *Id.*

15.   Contemporaneous with filing the Petition, Defendant filed a signed Declaration About an Individual Debtor's Schedules (the "Schedules Declaration"). *Ex. B*, at p. 2. In the Schedules Declaration, Defendant declared, "[u]nder penalty of perjury … that [he had] read the summary and schedules filed with this declaration and that they are true and correct." *Id.*

16.   Contemporaneous with filing the Petition, Defendant filed a signed Part 12 of the Statement of Financial Affairs (the "SOFA Declaration"). *Ex. A*, at p. 44; *Ex. B*, at p. 3. In the

SOFA Declaration, Defendant declared that he "read the answers on this *Statement of Financial Affairs* and any attachments, and [he] declare[s] under penalty of perjury that the answers are true and correct." *Id.* (emphasis in original).

17.     On December 1, 2016, the Chapter 7 Trustee conducted Defendant's meeting of creditors pursuant to section 341 of the Bankruptcy Code (the "341 Meeting").

18.     At the outset of the 341 Meeting, Defendant swore an oath to tell the truth.

19.     Defendant testified at the 341 Meeting that all of the information included in the Petition is true and correct, and he did not need to amend the Petition.

20.     On December 21, 2016, Plaintiff filed a Motion for Rule 2004 Examination of the Debtor [*see* Dkt. 14], which was granted on January 4, 2017. *See* Dkt. 16.

21.     On January 17, 2017, counsel for Plaintiff served Defendant with a subpoena for production of documents, which included a rider identifying the documents requested (the "Production Subpoena").

22.     Defendant produced several documents responsive to the Production Subpoena on February 17, 2017.

23.     On February 23, 2017, Defendant filed an Amended Statement of Financial Affairs (the "Amended SOFA"). *See* Dkt. 24. A true and correct copy of the Amended SOFA is attached hereto as Exhibit C.

24.     On April 13, 2017, counsel for Plaintiff conducted a 2004 examination of Defendant (the "2004 Exam").

25.     At the outset of the 2004 Exam, Defendant swore an oath to tell the truth.

26.     At the 2004 Exam, Defendant testified that all of the information included in the Petition is true and correct.

**II.    Defendant's Concealed and Undisclosed Interest in the Dorothy Fosse Trust.**

27.    Defendant had an obligation to disclose all legal, equitable, and beneficial interests he has in any and all trusts, future interests in property, and rights or powers exercisable for his benefit on item 25 of Schedule A/B of the Petition ("Schedule A/B").

28.    Defendant also had an obligation to disclose all property he is holding in trust for someone else on item 23 of the Statement of Financial Affairs.

   *a. Defendant's Undisclosed Interest in the Dorothy Fosse Trust.*

29.    On Schedule A/B, in response to item 25, Defendant stated that he has an interest in only one trust, the Eric Fosse Family Trust, with an unknown value. Defendant stated that the Eric Fosse Family Trust was the former owner of 1135 Skokie Ridge Drive, Glencoe (Defendant's address of record), which was quitclaimed to Defendant in 2008.

30.    Other than the Eric Fosse Family Trust, Defendant failed to disclose any legal or equitable interests he has in any other trusts, equitable or future interests in property, and rights or powers exercisable for his benefit on item 25 of Schedule A/B or anywhere else in the Petition.

31.    In response to item 35 of Schedule A/B, Defendant stated that he does not have any interests in any financial assets he did not already list.

32.    Upon information and belief, Defendant was a beneficiary of the Dorothy G. Fosse Revocable Trust (the "Dorothy Fosse Trust") on the Petition Date. Defendant has rights and powers in the Dorothy Fosse Trust that are exercisable for Defendant's benefit.

33.    At the 2004 Exam, Defendant testified that the Dorothy Fosse Trust owns three financial accounts: (i) a BMO Harris Bank checking account ending in 1303 (the "Harris

5

Account"), (ii) a Morgan Stanley IRA, and (iii) a North Shore Community Bank account (the "North Shore Account").

34. Dorothy G. Fosse is Defendant's mother. Upon information and belief, she is the settlor of the Dorothy Fosse Trust.

35. The Harris Account, Morgan Stanley IRA, and North Shore Account constitute the corpus of the Dorothy Fosse Trust.

36. At the 2004 Exam, Defendant testified that the Dorothy Fosse Trust funds Defendant's personal bank accounts freely upon Defendant's requests.

37. For instance, in January 2016, the Dorothy Fosse Trust wired $200,000 from the Morgan Stanley IRA to Defendant's personal Metropolitan Capital Bank and Trust account. Defendant testified at the 2004 Exam that the amount of $200,000 was determined based on Defendant's request.

38. On July 29, 2016, the Dorothy Fosse Trust transferred $225,000 into the Harris Account for Defendant's personal use. Again, the amount of $225,000 was determined based on Defendant's request.

39. Defendant is a signor on the Harris Account and the North Shore Account.

40. Defendant has a debit card for the Harris Account.

41. Defendant does not require permission to access or use the corpus of the Dorothy Fosse Trust, specifically funds in the Harris Account for Defendant's personal use.

42. Defendant does not keep records of property he receives from the corpus of the Dorothy Fosse Trust other than bank statements from the Harris Account.

43. In fact, at the 2004 Exam, Defendant testified that in the year preceding the Petition Date, the Dorothy Fosse Trust was Defendant's main source of income.

44. Within a year of the Petition Date, Defendant regularly exercised unfettered use and control over at least some of the Dorothy Fosse Trust corpus. During the year preceding the Petition Date, Defendant used the Harris Account without limitation. Defendant used the Harris Account for his personal use by charging expenses with a debit card linked to the Harris Account and writing himself checks for tens of thousands of dollars drawn from the Harris Account.

45. After filing this Bankruptcy Case, Defendant continued to exercise unfettered use and control over the Harris Account. Defendant may have also had unfettered use and control over the other accounts in the Dorothy Fosse Trust.

46. When completing Schedule A/B, Defendant considered the interests he has in trusts and disclosed only his interest in the Eric Fosse Family Trust. Defendant was aware of his interest in the Dorothy Fosse Trust, as he lived off of the corpus of the Dorothy Fosse Trust for a year preceding the Petition Date. Defendant intentionally concealed his interest in the Dorothy Fosse Trust by failing to disclose it on Schedule A/B.

47. Further, on Schedule I of the Petition ("Schedule I"), Defendant listed $18,150 from "family assistance" as his only source of income.

48. Yet, instead of receiving $18,150 from family assistance, Defendant actually received $18,150, or more, each month as disbursements from the Dorothy Fosse Trust.

49. By mischaracterizing the source of his income on Schedule I as "family assistance" rather than disbursements from the corpus of the Dorothy Fosse Trust which Defendant used to fund his day to day expenses in the year preceding the Petition Date, Defendant intentionally concealed his interest in the Dorothy Fosse Trust.

50. Further, Defendant failed to disclose his interest in the Dorothy Fosse Trust at the 341 Meeting.

*b. Defendant's Undisclosed Role as Trustee of the Dorothy Fosse Trust.*

51. In response to Part 9, item 23, of the First SOFA and the Amended SOFA, Defendant stated that he does not hold or control any property that someone else owns, including any property he borrowed from, is storing for, or holds in trust for someone.

52. In response to the Production Subpoena, on February 17, 2017, Defendant produced, *inter alia*, a notice of transfer of funds from a Morgan Stanley account ending in X788 owned by the Dorothy G. Fosse Revocable Trust as Amended Dated October 5, 1994, and Eric Fosse Trustee (the "Morgan Stanley Account").

53. Upon information and belief, Defendant is trustee of the Dorothy Fosse Trust's interest in the Morgan Stanley Account.

54. Defendant failed to disclose his role as trustee of the Dorothy Fosse Trust's interest in the Morgan Stanley Account on the First SOFA, on the Amended SOFA, at the 341 Meeting, and at the 2004 Meeting.

**III. Defendant's Undisclosed Business Interests and Connections.**

55. On item 27 of Part 11 of the First SOFA, Defendant stated that within four years of the Petition Date, he did not own any businesses, and he was not (i) a sole proprietor or self-employed in a trade, profession, or other activity, either full-time or part-time; (ii) a member of a limited liability company or a limited liability partnership; (iii) a partner in a partnership; (iv) an officer, director, or managing executive of a corporation; or (v) an owner of at least 5% of the voting or equity securities of a corporation.

56. On item 27 of Part 11 of the Amended SOFA Defendant checked the corresponding boxes indicating that, within four years of the Petition Date, he was (i) a member of a limited liability company or a limited liability partnership; (ii) an officer, director, or

8

managing executive of a corporation; and (iii) an owner of at least 5% of the voting or equity securities of a corporation.

57. At the same time, on item 27 of Part 11 of the Amended SOFA, Defendant checked the box stating that none of the above applied, indicating that he did not own or have any connections to any businesses within four years of the Petition Date.

58. Thus, it is unclear whether Defendant disclosed any interests in or connections to businesses within four years of the Petition Date on the Amended SOFA.

59. Further, even if Defendant did disclose on the Amended SOFA that he had interests in or connections to businesses within four years of the Petition Date, he failed to disclose any of the required information about them, including (i) the business name and address, (ii) the nature of the business, (iii) the name of the business's accountant or bookkeeper, (iv) the business's employer identification number, and (v) the dates the business existed.

60. In short, on the First SOFA and on the Amended SOFA, Defendant failed to disclose with any sort of specificity any interests in or connections to businesses that he held within four years of the Petition Date.

> ***a. Defendant's Undisclosed Business Interest in and/or Connection to HomeMade Pizza Company within Four Years of the Petition Date.***

61. Defendant founded HomeMade Pizza Company, LLC ("HomeMade Pizza"), and acted as its Chief Executive Officer through around 2010 or 2011.

62. After stepping down from Chief Executive Officer of HomeMade Pizza, Defendant continued to work for the company as an employee through March 2013.

63. HomeMade Pizza filed for chapter 7 bankruptcy relief on December 3, 2014 ("HomeMade Pizza Petition Date"). A true and correct copy of HomeMade Pizza's bankruptcy

petition, schedules, statement of financial affairs, and creditor matrix (the "HomeMade Pizza Petition") is attached hereto as Exhibit D.

64. Per the HomeMade Pizza Petition, as of the HomeMade Pizza Petition Date, Defendant was a shareholder of HomeMade Pizza, owning 6.96% of new series class 1 stock. *Ex. D*, at p. 55.

65. Per the HomeMade Pizza Petition, the following were shareholders of HomeMade Pizza as of the HomeMade Pizza Petition Date: (i) Defendant; (ii) Fosse FBO Chloe Fosse, Eric Fosse FBO Chloe Fosse; (iii) Fosse FBO Eloise Fosse, Eric Fosse FBO Eloise Fosse; and (iv) Fosse FBO Sabrina Fosse, Eric Fosse FBO Sabrina Fosse. *Ex. D*, at p. 81.

66. Per the HomeMade Pizza Petition, Defendnat was a creditor of HomeMade Pizza on the HomeMade Pizza Petition Date. *Ex. D*, at p. 89.

67. Defendant held an interest in and/or connection to HomeMade Pizza within four years of the Petition Date.

68. Defendant failed to disclose his interest in and/or connection to HomeMade Pizza within four years of the Petition Date on the Petition, at the 341 Meeting, and at the 2004 Exam.

### b. ***Defendant's Undisclosed Interest in and Connection to Peshtigo Finance, LLC, within Four Years of the Petition Date.***

69. Defendant founded Peshtigo Finance, LLC ("Peshtigo"), as Co-Managing Director on September 8, 2011.

70. Defendant resigned from Peshtigo on December 31, 2014.

71. Defendant held an interest in and was connected to Peshtigo within four years of the Petition Date.

72. Defendant failed to disclose his interest in and connection to Peshtigo within four years of the Petition Date on the Petition and at the 341 Meeting.

  *c. Defendant's Undisclosed Self-Employment as a Business Consultant within Four Years of the Petition Date.*

73. In response to the Production Subpoena, on February 17, 2017, Defendant produced, *inter alia*, federal income tax returns and corresponding worksheets and forms for 2013 (the "2013 Return").

74. Per the 2013 Return, Defendant earned $187,500 from Taylorsport, LLC, in miscellaneous income in 2013.

75. At the 2004 Exam, Defendant testified that Taylorsport, LLC, owns Guildhall Restaurant in Glencoe ("Guildhall"). Defendant testified that the $187,500 was income he received in 2013 for his self-employment as a business consultant to open Guildhall.

76. Defendant claimed various income and deductions related to his self-employment in 2013 on the 2013 Return.

77. At the 2004 Exam, Defendant testified that he was self-employed in the business of business consulting in 2013, which is within four years of the Petition Date.

78. Defendant failed to disclose his self-employment within four years of the Petition Date on the Petition and at the 341 Meeting.

**IV.** **Defendant's Concealed and Undisclosed Other Property.**

  *a. Defendant's Concealed, Undervalued, and Undisclosed Household Goods.*

79. On Schedule A/B, Defendant listed that he owned $3,000 worth of household goods and furnishings, including two bedroom sets, a dining room table and chairs, two sofas, two televisions, three computers, a bed, and dressers.

80. On September 23, 2016, only slightly more than one month before the Petition Date, Defendant executed an insurance policy for his real and personal property through Masterpiece (the "Homeowner's Insurance").

81. The Homeowner's Insurance provides "Deluxe Coverage" and replacement costs for Defendant's house at 1135 Skokie Ridge Drive, Glencoe, Illinois, and the contents of that house.

82. Defendant's house is covered by the Homeowner's Insurance for $1,793,000.

83. The contents of Defendant's house are covered by the Homeowner's Insurance for $896,500.

84. At the 2004 Exam, Defendant testified that he owns commercial grade appliances, including Wolf, Gaggenau, and Subzero brand appliances.

85. Defendant failed to disclose his commercial grade appliances on the Petition and at the 341 Meeting.

86. Defendant misrepresented the true value of his household goods and furnishings on the Petition and at the 341 Meeting.

### b. *Defendant's Concealed and Undisclosed Jewelry.*

87. On Schedule A/B, Defendant stated that he did not own any jewelry.

88. At the 2004 Exam, Defendant testified that he owned a wedding ring and two watches.

89. Defendant failed to disclose his jewelry on the Petition and at the 341 Meeting.

### c. *Defendant's Concealed and Undisclosed Interest in the Harris Account.*

90. On Schedule A/B, Defendant listed three deposits of money: (i) a checking account at Metropolitan Capital Bank ending in 8247, (ii) a checking account at Metropolitan Capital Bank ending in 7664, and (iii) a Money Market Account at Metropolitan Capital Bank ending in 7680.

91. On February 17, 2017, in response to the Production Subpoena, Defendant produced, *inter alia*, bank statements for the Harris Account.[1]

92. Within a year of the Petition Date, Defendant regularly exercised unfettered control and use of the Harris Account.

93. After filing the Bankruptcy Case, Defendant continued to regularly exercise unfettered control and use of the Harris Account.

94. Defendant testified at the 2004 Exam that he used the funds in the Harris Account as his primary means of paying his personal expenses during the year preceding the Petition Date.

95. Defendant does not require permission to use the funds in the Harris Account to pay his day to day expenses.

96. Funds are regularly deposited into the Harris Account upon Defendant's request and for Defendant's personal use.

97. Defendant withdrew and/or transferred a material amount of funds from the Harris Account for his personal use within a year of the Petition Date.

98. On the Petition Date, Defendant held a beneficial and equitable interest in the Harris Account.

99. The Harris Account is property of Defendant's bankruptcy estate.

100. Defendant failed to disclose his interest in the Harris Account on the Petition and at the 341 Meeting.

---

[1] The Harris Account is one of the accounts that comprise the corpus of the Dorothy Fosse Trust.  In addition to and notwithstanding Defendant's concealed interest in the Dorothy Fosse Trust, the facts give rise to the conclusion that, at the very least, Defendant had a beneficial interest in the Harris Account.

## COUNT I – FRAUDULENT CONCEALMENT OF PROPERTY
## 11 U.S.C. § 727(a)(2)(A)

101. Plaintiff repeats and realleges all of the preceding paragraphs of this Complaint as though fully set forth herein.

102. Section 727(a)(2) of the Bankruptcy Code states, in relevant part, "The court shall grant the debtor a discharge, unless – the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed … property of the debtor, within one year before the date of the filing of the petition." 11 U.S.C. § 727(a)(2)(A).

103. In and in connection with this Bankruptcy Case, including on the Petition, at the 341 Meeting, and at the 2004 Exam, Defendant concealed or undervalued his property or interests in property owned within one year of the Petition Date.

104. The property that Defendant concealed or undervalued includes, but is not limited to, Defendant's (i) interest in the Dorothy Fosse Trust, (ii) ownership and value of household goods and furnishings, (iii) ownership of jewelry, and (iv) interest in the Harris Account (collectively, the "Property").[2]

105. The Property constitutes property of Defendant's bankruptcy estate pursuant to section 541(a) of the Bankruptcy Code.

106. Defendant acted with actual intent to defraud, hinder, or delay his creditors or the Chapter 7 Trustee when concealing or undervaluing the Property.

107. In concealing or undervaluing the Property, Defendant acted with a reckless and cavalier disregard for the truth.

---

[2] Plaintiff alleges that each of the assets constituting the Property, individually and/or collectively, were fraudulently concealed and thus need not establish that all of them were concealed to satisfy his burden under this count.

14

108. Defendant knew that failing to disclose his interests in the Property or undervaluing the Property could seriously mislead his creditors and/or the Chapter 7 Trustee.

109. By concealing and undervaluing the Property he owned within one year of the Petition Date, Defendant hindered, delayed, and otherwise prevented his creditors from reaching the Property to satisfy Defendant's debts.

WHEREFORE, Plaintiff respectfully prays that this Court render a judgment

A. finding Defendant, with intent to hinder, delay, and/or defraud his creditors or the Chapter 7 Trustee, transferred, removed, destroyed, mutilated, or concealed property of Defendant's bankruptcy estate, within one year before the date of filing this Bankruptcy Case;

B. denying Defendant's discharge pursuant to section 727(a)(2)(A) of the Bankruptcy Code; and

C. ordering all other and further relief as this Court deems proper and just.

### COUNT II – FALSE OATHS
### 11 U.S.C. §§ 727(a)(4)(A)

110. Plaintiff repeats and realleges all of the preceding paragraphs of this Complaint as though fully set forth herein.

111. Section 727(a)(4)(A) of the Bankruptcy Code states, in relevant part, "The court shall grant the debtor a discharge, unless … the debtor knowingly and fraudulently, in or in connection with the case – made a false oath or account." 11 U.S.C. § 727(a)(4)(A).

112. In and in connection with this Bankruptcy Case, including on the Petition, at the 341 Meeting, and at the 2004 Exam, Defendant made numerous false oaths or accounts, including, but not limited to, those regarding Defendant's (i) interest in the Dorothy Fosse Trust, (ii) role as trustee of the Dorothy Fosse Trust's ownership of the Morgan Stanley Account, (iii)

business interest in and connection to HomeMade Pizza within four years of the Petition Date, (iv) business interest in and connection to Peshtigo within four years of the Petition Date, (v) self-employment within four years of the Petition Date, (vi) ownership and value of household goods and furnishings, (vii) ownership of jewelry, and (viii) interest in the Harris Account (collectively, the "False Oaths").[3]

113. Defendant acted with actual intent to defraud, hinder, or delay his creditors or the Chapter 7 Trustee when making the False Oaths.

114. In making the False Oaths, Defendant acted with a reckless and cavalier disregard for the truth.

115. The False Oaths bear a relationship to Defendant's estate transactions, concern the discovery of Defendant's assets, and/or concern the existence and disposition of Defendant's property.

116. Defendant read the statements and representations he made in the Petition before declaring, under penalty of perjury, as to their veracity.

117. Defendant reviewed the statements and representations made in the Petition with Mr. Rotman and/or another attorney before declaring, under penalty of perjury, as to their veracity.

118. Defendant received legal counsel and advice regarding those statements and representations, before declaring, under penalty of perjury, as to their veracity.

119. Defendant swore an oath as to the veracity of his testimony at the 341 Meeting and the 2004 Exam.

---

[3] Plaintiff alleges that each of the oaths or accounts constituting the False Oaths, individually and/or collectively, were made in or in connection with this Bankruptcy Case and thus need not establish that all of them were falsely made to satisfy his burden under this count.

120. Defendant knew that some of the statements and representations made in the Petition, at the 341 Meeting, and at the 2004 Exam were false.

121. As of the date of filing this Complaint, the False Oaths in the Petition remain uncorrected, thereby demonstrating Defendant's continuing reckless and cavalier disregard for the truth.

WHEREFORE, Plaintiff respectfully prays that this Court render a judgment

A. finding Defendant knowingly and fraudulently made false oaths or accounts in or in connection with this Bankruptcy Case;

B. denying Defendant's discharge pursuant to section 727(a)(4)(A) of the Bankruptcy Code; and

C. ordering all other and further relief as this Court deems proper and just.

RESPECTFULLY SUBMITTED:

PATRICK S. LAYNG
UNITED STATES TRUSTEE

DATED: May 22, 2017            By: /s/ *Elizabeth R. Brusa*
                                   Elizabeth R. Brusa, Trial Attorney
                                   Office of the U.S. Trustee
                                   219 South Dearborn, Room 873
                                   Chicago, Illinois  60604
                                   (312) 886-5786